IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KURT D. SILVA,

        Plaintiff,

v().                                                  CIV. No. 98-197 JP/WWD

GOODWILL INDUSTRIES
OF NEW MEXICO, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Kurt Silva is a former employee of Defendant Goodwill Industries of New Mexico, Inc. ("Goodwill"). Plaintiff claims that Defendant violated Title VII of the Civil Rights Act of 1964 by subjecting him to a hostile work environment and by discriminating against him on the basis of his sex when Defendant terminated his employment on April 24, 1997. Plaintiff also claims the Defendant's employee handbook was a contract which Defendant breached by failing to follow its progressive discipline policy. There are four motions pending in the case: (1) "Plaintiff's 12/29/98 Motion in Limine" (Doc. No. 43); (2) "Plaintiff's 1/8/99 Motion in Limine" (Doc. No. 46); (3) Defendant's Motion in Limine (Doc. No. 50); and (4) Defendant's Motion for Summary Judgment (Doc. No. 54).

## PRELIMINARY MATTERS

Plaintiff's complaint asserts two separate counts. Count I states a claim for unlawful sex discrimination in his termination from employment with the Defendant. Count II asserts that

Defendant breached its contract with Plaintiff. However, throughout his briefs addressing the various pretrial motions that have been filed in this case, Plaintiff also appears to argue that his supervisor sexually harassed Plaintiff.

In order to state a valid claim under Title VII, a plaintiff must first exhaust his administrative remedies. See Woodman v. Runyon, 132 F. 3d 1330, 1341 (10th Cir. 1997). The lawsuit may include claims of discrimination reasonably related to the allegations listed in the administrative charge. Brown v. Harshorne Public School Dist. #1, 864 F.2d 680, 682 (10th Cir. 1988). Defendant contends that Plaintiff failed to exhaust his administrative remedies as to the harassment claim.

In this case, Plaintiff filed two charges with the EEOC. Affidavit of Frank L. Iske and attached exhibits; Affidavit of Charles R. Lynn, Exhibits C and D. Neither charge mentions hostile work environment or sexual harassment, and both charges state that the only date of discrimination was April 24, 1997, the date Plaintiff's employment was terminated. Nor is Plaintiff's harassment claim reasonably related to the claim of discriminatory discharge. The allegations that form the basis of Plaintiff's claim of sexual harassment are that his supervisor, Margaret McNatt, questioned and made statements to Plaintiff about his sex life. On the other hand, underlying Plaintiff's discriminatory discharge claim is the allegation that Defendant terminated him because he is a man. In a similar case, the Tenth Circuit found that such claims are not "reasonably related." Aramburu v. The Boeing Co., 112 F.3d 1398, 1409-10 (10th Cir. 1997). Consequently, Plaintiff's claim of harassment should be dismissed for failure to exhaust administrative remedies.

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

A. Facts

The relevant facts, based on deposition testimony, affidavits, and other admissible evidence on file and viewed in the light most favorable to the Plaintiff, are as follows.

Plaintiff Kurt Silva worked for Defendant Goodwill Industries of New Mexico from February 18, 1992 until his job was terminated on April 24, 1997. At the time of termination, Plaintiff was working as a vocational coordinator in the Rehabilitation Department of Goodwill. His immediate supervisor was Margaret McNatt, who replaced Plaintiff as Facility Rehabilitation Supervisor in late 1996. Affidavit of Cheryl McLamb filed Jan. 19, 1999 at ¶¶ 2-3.

After McNatt became Plaintiff's supervisor, she began making comments about his sex life, such as "You probably just slept with her, and that's why she is giving you a good comment," asking Plaintiff if he was having an affair with fellow employee Jeannie Hidalgo, and saying that women are better workers than men. Defendant's Exh. A, Silva Depo. at pp. 26-27, 43-44; Plaintiff's Exh. 1 and 2, Silva Depo at pp. 38-40, 92-94. McNatt also had a reputation among some Goodwill employees for being a "manhater." Plaintiff's Exh. 10, Hidalgo Depo. at p. 16. In addition, Plaintiff's job duties changed to include the writing of additional reports; Plaintiff attributed the change to McNatt's bias against him as a male. Defendant's Exh. A, Silva Depo at pp. 26, 45; Plaintiff's Exh. 2, Silva Depo at p. 34. However, Plaintiff has no direct evidence of this motivation, and McNatt has stated that Plaintiff was given additional duties to compensate for the fact that other duties had been taken away and because he was good at writing the reports. Affidavit of Margaret McNatt filed Feb. 16, 1999. Plaintiff does not believe that anyone at Goodwill other than McNatt has discriminated against him because of his sex. Defendant's Exh.

A, Silva Depo. at p. 45.

On the morning of April 23, 1997, McNatt asked Plaintiff to meet with a potential client's behavior therapist. Plaintiff's Exh. 5, Silva Depo. at p. 83. Plaintiff went to the meeting and was confronted with many questions he was not prepared to answer. Id. at 84-85. Plaintiff left the meeting to find McNatt. Id. When Cheryl McLamb told Plaintiff that McNatt had left for an early lunch, Plaintiff lost his temper. Id. In a loud voice Plaintiff called McNatt a "fat, fucking incompetent bitch" and said "Margaret fucks up everything she does" and "Where the fuck is she?" Id. at pp. 85-86; Affidavit of Cheryl McLamb filed Jan. 19, 1999 at ¶11. Plaintiff's outburst lasted for two to four minutes, despite McLamb's request that he calm down, come in, and close the door. Silva Depo at pp. 86-87; McLamb Affidavit at ¶11. Two other employees came into the office when they heard Plaintiff, and the employee in the adjacent office also heard Plaintiff. Id. Plaintiff does not dispute this version of his conduct.

Later that day, McLamb told Charles Lynn, Executive Director of Goodwill, about the incident. McLamb Affidavit filed Jan. 19, 1999 at ¶ 13. There is no direct evidence that Margaret McNatt recommended that Plaintiff's employment be terminated for his outburst; in fact, Ms. McLamb and Ms. Watson deny that Ms. McNatt took any position on the issue. McLamb Affidavit filed Jan. 19, 1999 at ¶ 14; Watson Affidavit filed Jan. 19, 1999 at ¶ 24. Plaintiff believes that McNatt recommended his termination to Lindsay Watson, Director of the Rehabilitation Department (Silva Depo. at p. 60 (attached to Defendant's Reply Brief); Plaintiff's Response Brief at 7-9), but these assertions are based on speculation. However, Charles Lynn has stated that often a recommendation to terminate an employee comes from his or her immediate supervisor. Plaintiff's Exh. 25, Lynn Depo at p. 21.

Defendant terminated Plaintiff's employment on April 24, 1996, the day following his outburst. After Plaintiff left, his job duties were taken over by two males and a female. Affidavit of Lindsay Watson filed Jan. 19, 1999 at ¶¶ 32, 35; Affidavit of Margaret McNatt filed Jan. 19, 1999 at ¶ 19; Plaintiff's Exh. 35, McNatt Depo. at pp 51-53.

**B. Discriminatory Discharge**

Title VII discrimination claims are analyzed by applying the burden-shifting approach of McDonnell Douglas Corp. v. Green, 411 U. S. 792, 802-04 (1973). Plaintiff must first establish a prima facie case of discrimination. Id. If plaintiff can establish a prima facie case, the employer has the burden to come forward with a nondiscriminatory explanation for the action. Id. If the employer presents such an explanation, the burden then shifts back to the plaintiff to show that the employer's reason is mere pretext and is unworthy of belief. Id.

    1. Prima facie case

Plaintiff alleges that he was fired because he is a man, not because he violated a work rule. "To establish a prima facie case on a claim of discriminatory discharge, where the plaintiff was discharged for the purported violation of a work rule, the plaintiff must show that (1) he is a member of a protected class, (2) that he was discharged for violating a work rule, and (3) that similarly situated non-minority employees were treated differently." Aramburu v. Boeing Comp., 112 F.3d 1398, 1403 (10th Cir. 1997) (citing E.E.O.C. v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir.1992)). However, because Plaintiff is male, he belongs to an historically favored group. Therefore, the typical prima facie case must be adjusted for the specific context of reverse discrimination. Sanchez v. Philip Morris Inc., 992 F.2d 244, 248 (10th Cir.1993). Instead of showing membership in a protected class, Plaintiff must establish background circumstances

5

which support an inference that Goodwill is an unusual employer who discriminates against the majority.  Id.; Livingston v. Roadway Express, Inc., 802 F.2d 1250, 1252 (10th Cir. 1986).

The parties appear to agree that Plaintiff was fired for violating a work rule.  However, they dispute whether Plaintiff has met the other requirements of the prima facie case.

*(a) Similarly situated female employees*

Defendant argues that Plaintiff has not shown that similarly situated female employees were treated differently than he was.  First, Plaintiff contends that he need not make such a showing in his prima facie case.  However, this argument fails because in Aramburu, 112 F.3d at 1403, the Tenth Circuit clearly stated that this element is part of a plaintiff's prima facie case.  Second, Plaintiff argues that in 1998 a woman named Rosé Lopez was similarly situated to Plaintiff and "went off the deep end" and used profanities, saying "What the fuck.  Everybody else is slow" and "Fuck you" directly to her supervisor, Richard Davisson.  Plaintiff's Exh. 33, Depo. of Jeannie Hidalgo at pp. 18-19.  The parties agree that Ms. Lopez was not fired or reprimanded for her actions.  Thus, the only relevant issue that remains is whether Ms. Lopez was "similarly situated" to Plaintiff.

An employee is "similarly situated" if the employee has the same supervisor and violated work rules of comparable seriousness.  Aramburu, 112 F.3d at 1404.  Compare Starks v. Coors Brewing Co., Inc., 954 F.Supp. 1463, 1467 (D. Colo. 1997) (reviewing pre-Aramburu Tenth Circuit law and stating, "in this Circuit the existence of different supervisors is merely a factor that the fact finder may consider and not a dispositive determinant in every case.").  "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are

6

similarly situated." Aramburu, 112 F.3d at 1404.

In this case, there is no evidence that Plaintiff and Ms. Lopez had the same supervisor or even worked in the same department at Goodwill. In addition, Defendant contends that at the time of the incident involving Ms. Lopez, she was a client of Goodwill, not an employee. In support of that argument, Defendant points to the Affidavit of Cheryl McLamb, Defendant's Human Resource Director, in which Ms. McLamb states that Ms. Lopez was a client. Affidavit of Cheryl McLamb filed November 9, 1998 at ¶ 4. Ms. McLamb's assertion is supported by documentation attached to her Affidavit, including the "Acknowledgment of Rehabilitation Client Status" signed by Rosé Lopez on January 21, 1998. That document clearly states, "I acknowledge that I have been accepted as a client for the purposes of rehabilitation ... ; that the employer-employee relationship is not deemed to exist between myself and Goodwill ..." Affidavit of Cheryl McLamb filed November 9, 1998, Exh. A.

Plaintiff has not presented any admissible evidence that Rosé Lopez was an employee of Goodwill.[1] Because she was a client of Goodwill, Rosé Lopez was not similarly situated to Plaintiff, who was an employee of Defendant. Consequently, Plaintiff has failed to meet this prong of her prima facie case.

---

[1] Plaintiff contends that Ms. Lopez could not have been a client of Defendant because she has testified that she does not have an emotional or physical disability that makes it difficult for her to work at places other than Goodwill. Plaintiff's Exh. 34, Lopez Depo. at p.8. Regardless of Ms. Lopez self-assessment, the only relevant inquiry is whether *Defendant* considered Lopez to be a client. Plaintiff has presented no evidence that Ms. Lopez' status at Goodwill was anything other than that of a client.

*(b) Background circumstances of reverse discrimination*

Defendant also argues that Plaintiff has failed to establish background circumstances which support an inference that Goodwill is an unusual employer who discriminates against the majority as required by <u>Livingstone v. Roadway Express, Inc.</u>, 802 F.2d 1250, 1252 (10th Cir. 1986).

In an effort to show background circumstances of discrimination against men, Plaintiff relies on several of Defendant's answers to Interrogatories. The evidence shows that during the period beginning August 2, 1995 and ending September 4, 1998, ten employees were terminated from their employment in Defendant's Rehabilitation Department. Plaintiff's Exh. 26. Three employees (two men and one woman) were terminated automatically for absenteeism. Two employees (one man and one woman) were terminated for some form of misconduct. Two employees (one man and one woman) were terminated for theft or dishonesty. Two employees (both females) were terminated for job performance inadequacies. One employee (female) was terminated for tardiness. Plaintiff's Exhibit 26 also shows that Margaret McNatt recommended that four of the ten employees be terminated; all of the four were female. Exhibit 26 also shows that eight of the ten terminated employees were replaced; three of the replacements were female, and five were male.

Plaintiff's Exhibit 37 and pages 35-37 of Charles Lynn's deposition show that at the time Plaintiff was terminated, Goodwill's Rehabilitation Department at large consisted of fifteen females and nine males.[2] Plaintiff's Exhibit 38 reveals that the Rehabilitation Department has hired the following group of employees: two females and four males in 1993; seven females and three males in 1994; three males and two females in 1995; five females and three males in 1996; ten females

---

[2]This includes Emily Watson, Margaret McNatt, Ms. White, Shari Quimby, and Plaintiff.

8

and one male in 1997; and seven females and two males in 1998.[3] Finally, the Affidavit of Cheryl McLamb informs that at the time Ms. McNatt replaced Plaintiff as Facility Rehabilitation Supervisor, there were seven females and two males in the Facility Rehabilitation Department (a sub-department within Rehabilitation). Since that time, ten females and seven males have been hired, and the present composition of the department is eight females and four males.

This evidence is inadequate to show that Defendant is the "unusual employer who discriminates against the majority." Livingstone v. Roadway Express, Inc., 802 F.2d 1250, 1252 (10th Cir. 1986) or that Margaret McNatt discriminates against men in her hiring and firing practices. Ms. McNatt has not fired men more than women, nor has she been reluctant to hire men. While the Rehabilitation Department at large appears to have hired more women than men, that means little without information about the applicant pool. Because Plaintiff has failed to prove the "unusual employer" prong of his prima facie case, this is another reason that his claim for discriminatory discharge should be dismissed.

2. Legitimate non-discriminatory reason

Even if Plaintiff had proven his prima facie case, the analysis does not end because Defendant has successfully set forth evidence that it terminated Plaintiff's employment for his unprofessional behavior on April 23, 1997. This reason is legitimate and non-discriminatory. Because Defendant has met its burden to articulate and produce some evidence that Plaintiff was discharged for a facially legitimate and nondiscriminatory reason, "the presumption of

---

[3]This information would be more helpful if we knew the numbers of qualified male and female applicants for each year. Plaintiff's Exhibit 39 attempts to address this issue in part, but is apparently unsigned, unsworn handwritten notes summarizing the applications submitted to Defendant in 1998. Because Exhibit 39 was not sworn to under oath, it is not admissible evidence and will not be considered.

discrimination established by the prima facie showing simply drops out of the picture." See Jones v. Unisys Corp., 54 F.3d 624, 630 (10th Cir.1995) (internal quotation omitted).

    3. Pretext

Plaintiff must now present evidence raising a genuine issue that his job termination was the result of his sex or that the reason offered by Defendant for ending his employment was a mere pretext. See Jones, 54 F.3d at 630. The plaintiff's proof of pretext must consist of more than a mere refutation of the defendant's explanation. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981). The plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256. "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988).

Plaintiff offered no evidence that Defendant's reason for terminating him is unworthy of credence. He has stated that the only person who discriminated against him on the basis of his sex was Margaret McNatt, and he has presented no evidence that she took part in the decision to terminate him. Plaintiff has not shown that Defendant is the unusual employer who discriminates against males or that similarly situated females were treated differently than he was. In short, Plaintiff has failed to prove his prima facie case and to show that Defendant's legitimate, non-discriminatory reason for his termination was a mere pretext. Consequently, Plaintiff's claim of discriminatory discharge should be dismissed.

## C. Breach of Contract

Plaintiff's implied contract claim appears to be marginal, at best. However, "the most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice—that is the seminal teaching of United Mine Workers of America v. Gibbs, 383 U.S. 715 [ ](1966) . . . ." Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995). See also 28 U.S.C. § 1367(c)(3) (stating that federal district court may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction). Dismissal of state law claims is dictated by concerns over "judicial economy, fairness, convenience, and comity." Ball, 54 F. 3d at 669. Only when there are compelling reasons to the contrary should a federal district court refrain from dismissing the state law claims. See id. Consequently, the best approach by this federal court is to dismiss the implied contract claim without prejudice so Plaintiff may pursue it in state court, which may be more familiar with New Mexico state law principles of breach of implied contract of employment.

## **OTHER MOTIONS**

Because all of Plaintiff's claims should be dismissed, "Plaintiff's 12/29/98 Motion in Limine" (Doc. No. 43), "Plaintiff's 1/8/99 Motion in Limine" (Doc. No. 46), and Defendant's Motion in Limine (Doc. No. 50) should be denied as moot.

IT IS THEREFORE ORDERED that:

(1)     "Plaintiff's 12/29/98 Motion in Limine" (Doc. No. 43) is DENIED;

(2)     "Plaintiff's 1/8/99 Motion in Limine" (Doc. No. 46) is DENIED;

(3)     Defendant's Motion in Limine (Doc. No. 50) is DENIED;

(4) Defendant's Motion for Summary Judgment (Doc. No. 54) is GRANTED as to Plaintiff's claim of discriminatory termination of Plaintiff's employment on the basis of his sex and Plaintiff's claim of hostile work environment/sexual harassment; and

(5) Plaintiff's state law claim of breach of implied contract of employment is dismissed without prejudice.

*/s/ James A. Parker*
**UNITED STATES DISTRICT JUDGE**